[If you need additional space for ANY section, please attach an additional sheet and reference that section]



FILED

3/6/2024

GMM

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

Michael Flournoy,　　　　　　　　　　)
Plaintiff　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　)
v.　　　　　　　　　　　　　　　　　)　　Case No.
　　　　　　　　　　　　　　　　　　)
Wheatland Tube, Zekelman Industries, 　)　　**1:24-cv-01896**
Sergio Gonzalez, Erin Campbell, Terrance　)　　**Judge Manish S. Shah**
Marshall, Ryan Lord, Jim Lipka, Keith　)　　**Magistrate Judge Gabriel A.**
Campos, Justin Kimes, Alejandro Mendoza )　　**Fuentes**
Defendant(s)　　　　　　　　　　　　)　　**Random / Cat. 2**

## COMPLAINT OF EMPLOYMENT DISCRIMINATION

1. This is an action for employment discrimination.

2. The plaintiff is Michael Flournoy of the county of Cook in the state of Illinois.

3. The defendant is＿＿**See attached**＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿, whose

street address is＿＿**See attached**＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿,

(city)＿＿＿＿＿＿(county)＿＿＿＿＿＿(state)＿＿＿＿＿＿(ZIP)＿＿＿＿

(Defendant's telephone number)　　(＿＿＿) – ＿＿＿＿＿＿＿＿＿

4. The plaintiff sought employment or was employed by the defendant at (street address)

    4435 S Western Blvd (city) Chicago (county) Cook (state) Illinois (ZIP code) 60609＿＿＿

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

Rev. 06/27/2016

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

5.  The plaintiff [*check one box*]

    (a)  ☐   was denied employment by the defendant.

    (b)  ☐   was hired and is still employed by the defendant.

    (c)  ☒   was employed but is no longer employed by the defendant.

6.  The defendant discriminated against the plaintiff on or about, or beginning on or about, (month) November, (day) 29, (year) 2022                    .

7.1  *(Choose paragraph 7.1 or 7.2, do not complete both.)*

    (a)  The defendant is not a federal governmental agency, and the plaintiff [*check one box*] ☒*has* ☐*has not* filed a charge or charges against the defendant

        asserting the acts of discrimination indicated in this complaint with any of the

        following government agencies:

        (i)  ☒ the United States Equal Employment Opportunity Commission, on or

            about (month) December (day) 7(year) 2023                    .

        (ii)  ☐ the Illinois Department of Human Rights, on or about

            (month)_____(day)_____(year)_____.

    (b)  If charges *were* filed with an agency indicated above, a copy of the charge is

        attached. ☒ Yes, ☐ No, **but plaintiff will file a copy of the charge within 14 days**.

    It is the policy of both the Equal Employment Opportunity Commission and the Illinois

    Department of Human Rights to cross-file with the other agency all charges received. The

    plaintiff has no reason to believe that this policy was not followed in this case.

7.2  The defendant is a federal governmental agency, and

    (a)    the plaintiff previously filed a Complaint of Employment Discrimination with the

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

defendant asserting the acts of discrimination indicated in this court complaint.

    ☐ Yes (month)_____(day)_____ (year) _____

    ☐ No, did not file Complaint of Employment Discrimination

(b)    The plaintiff received a Final Agency Decision on (month)_____

    (day) _____(year)_____.

(c)    Attached is a copy of the

    (i) Complaint of Employment Discrimination,

        [] Yes    ☐ No, but a copy will be filed within 14 days.

    (ii) Final Agency Decision

        [] Yes    ☐ N0, but a copy will be filed within 14 days.

8.    *(Complete paragraph 8 only if defendant is not a federal governmental agency.)*

    *(a)* ☐    the United States Equal Employment Opportunity Commission has not

        issued a *Notice of Right to Sue.*

    (b) ☒ the United States Equal Employment Opportunity Commission has issued

        a *Notice of Right to Sue*, which was received by the plaintiff on

        (month) December (day) 7(year) 2023   a copy of which

        *Notice* is attached to this complaint.

9.    The defendant discriminated against the plaintiff because of the plaintiff's [*check only*

*those that apply*]:

(a)  ☐ Age (Age Discrimination Employment Act).

(b)  ☒ Color (Title VII of the Civil Rights Act of 1964 and 42 U.S.C. §1981).

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

(c) ☐ Disability (Americans with Disabilities Act or Rehabilitation Act)

(d) ☐ National Origin (Title VII of the Civil Rights Act of 1964 and 42 U.S.C. §1981).

(e) ☒ Race (Title VII of the Civil Rights Act of 1964 and 42 U.S.C. §1981).

(f) ☒ Religion (Title VII of the Civil Rights Act of 1964)

(g) ☐ Sex (Title VII of the Civil Rights Act of 1964)

10. If the defendant is a state, county, municipal (city, town or village) or other local governmental agency, plaintiff further alleges discrimination on the basis of race, color, or national origin (42 U.S.C. § 1983).

11. Jurisdiction over the statutory violation alleged is conferred as follows: for Title VII claims by 28 U.S.C.§1331, 28 U.S.C.§1343(a)(3), and 42 U.S.C.§2000e-5(f)(3); for 42 U.S.C.§1981 and §1983 by 42 U.S.C.§1988; for the ADA by 42 U.S.C.§12117; for the Rehabilitation Act, 29 U.S.C. § 791; and for the ADEA, 29 U.S.C. § 626(c).

12. The defendant [*check only those that apply*]
(a) ☐ failed to hire the plaintiff.

(b) ☒ terminated the plaintiff's employment.

(c) ☐ failed to promote the plaintiff.

(d) ☒ failed to reasonably accommodate the plaintiff's religion.

(e) ☐ failed to reasonably accommodate the plaintiff's disabilities.

(f) ☐ failed to stop harassment;

(g) ☒ retaliated against the plaintiff because the plaintiff did something to assert rights protected by the laws identified in paragraphs 9 and 10 above;

(h) ☐ other (specify): _____

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

13.    The facts supporting the plaintiff's claim of discrimination are as follows:

1. This Complaint alleges that Wheatland Tube/Zekelman Industries knowingly and willingly discriminated against Mr. Michael Flournoy, its only Muslim African American employee and retaliated against Him for filing a complaint for unfair treatment, discrimination, and the maintenance of unsafe work practices. They further increased Mr. Flournoy's tasks beyond the scope of His employment, attempting to make Him quit after He requested a religious comp day, resulting in a work-related injury.

And further states as follows:

2. Mr. Flournoy began employment at Zekelman Industries, Wheatland Tube (4435 S. Western Blvd, Chicago, Illinois 60609) on 8/7/22. Successful probation period was completed after 90 days on 11/30/22, without incident or infraction. Mr. Flournoy obtained permission to make His Islamic prayer at work from His supervisor, Foreman Terrance Marshall. Mr. Flournoy filed a formal complaint for discrimination, unfair treatment, intimidation, and unsafe work practices against Foreman, Alejandro Mendoza on 11/30/22. The incident took place at the Western Blvd location on 11/29/22 (Ex. A). During this incident, Mendoza told Mr. Flournoy that a Mexican native, only known as "Jose", was due assistance in completion of work assignment and Mr. Flournoy was not. Marshall authorized a lunch break for Mr. Flournoy at or about 2:16 a.m. during the third shift before Mendoza caused the break to be terminated, forcing Mr. Flournoy to work the entire shift without break or performing His required prayers (EX.B).

3. Mr. Flournoy made a verbal complaint against Mendoza to Marshall at the end of the shift alleging the above violations of unfair treatment in confidence. Marshall then shared the information with Mendoza and Foreman Keith Campos in another setting. On the next night, 11/30/22 during third shift, Foreman(s) Marshall, Mendoza, and Campos, called Mr. Flournoy into the office and through intimidation tried to get Him to recant His complaint. Prior to the 11/29/22 work assignment, Mr. Flournoy had not been trained to complete any of the responsibilities required for Building Two. Mendoza told Mr. Flournoy that "Jose" who had worked for the company more than two years "hadn't been trained properly in the task, which required Mendoza's help, while Mr. Flournoy

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

Rev. 04/05/2018

5

who had just completed probation as a Truck Loader (different position) was required to "figure it out". Mr. Flournoy raised safety concerns about the dangers of handling the large pipes using the outdated machines and was discounted. <u>Campos</u> and <u>Marshall</u> did not speak against <u>Mendoza's</u> attempts to get the complaint(s) recanted, in support of His position. These Foremen held the meeting without a union representative for Mr. Flournoy.

4. On 11/30/22 Before shift started. Mr. Flournoy emailed Human Resources staff members <u>Sergio Gonzalez</u> and <u>Erin Campbell</u> a detailed formal complaint about the incident (Ex.A). <u>Gonzalez</u> and <u>Campbell</u> then had Mr. Flournoy report to their office before shift on or about two days later for interviews (EX.C). Mr. Flournoy requested an investigation into the allegations of misconduct and named <u>Campos</u>, "Jose", and <u>Marshall</u> as witness in addition to requesting video surveillance to support His allegations about timing, place and persons involved.

5. <u>Gonzalez</u> and <u>Campbell</u> informed Mr. Flournoy that He would not be allowed to work as a "Material Handler" while the investigation took place under <u>Mendoza</u>. Mr. Flournoy was not given any updates on the investigation or formal documentation as to the results of the investigation.

6. On or about 1/10/23, Mr. Flournoy began to be trained as a Material Handler in Building Three. Only being told by <u>Marshall</u> that <u>Mendoza</u> no longer worked for the company. <u>Marshall</u> told Mr. Flournoy that "the section he was assigned to was where employees were sent who were either fired or quit, and most quit". <u>Marshall</u> also informed Mr. Flournoy that the company had some special assignments that would require Him to work on Friday which was His off day. Mr. Flournoy's main reason for accepting employment at Wheatland Tube/Zekelman Industries was because it provided Friday/Saturday off, Friday which is Mr. Flournoy's Holy Islamic day of worship.

7. <u>Marshall</u> was reminded of Mr. Flournoy's faith through a religious comp request, and He was referred to Foreman <u>Ryan Lord</u> who "was <u>Marshall's</u> supervisor and made the work schedules". <u>Marshall</u> gave <u>Lord's</u> cell phone number and told Mr. Flournoy to text the religious comp request. On 2/3/23 Mr. Flournoy sent the request at 3:19 a.m (Ex.D) and was not scheduled by <u>Lord</u> to work on the Holy Day afterward. Plaintiff also had to contact Union Rep. only known as "Jay" to correct scheduling afterwards (EX.E).

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

Rev. 04/05/2018

6

8. Mr. Flournoy began to receive noticeable retaliation from the supervisors after the religious comp request. He complained to Lord and Foreman Jim Lipka that the "machines were set to produce pipe at a rate too fast to safely move them, and He could not take lunch or break". Both Foremen stated they had made notes to have someone stationed to help".

9. Mr. Flournoy did not receive any help while other non-Muslim employees were not required to work alone. In addition, Mr. Flournoy was required to use a forklift that was ill suited for the job assignment. He was forced to use double the amount of 2x4's to stack the pipe against training and safety requirements (EX.F). As a result, Mr. Flournoy was hurt on 2/21/23.

10. Mr. Flournoy reported the injury and sought medical attention. Gonzalez informed Him that He had to complete all required forms/steps required by Justin Kimes, Health and Safety manager. On 2/27/23 Kimes requested and started to receive doctors' records. Kimes also requested Mr. Flournoy to work from home against doctors' orders (EX.G).

11. Mr. Flournoy completed all Workmen's Compensation requirement, including but not limited to allowing a nurse who represented Wheatland Tube/Zekelman Industries to attend doctors' appointments and review/receive copies of all medication prescribed (EX.H).

12. On 4/5/23, Mr. Flournoy received "restricted light duty" return to work from His doctor (EX.I). Wheatland Tube/Zekelman Industries required Mr. Flournoy to return to work under medication while having a zero-tolerance policy to being under the influence of any intoxicants, knowing Mr. Flournoy had been prescribed medication (EX.J). On 3/9/23, Mr. Flournoy noticed Lord scheduled Him to work on His religious comp/off day, 3/10/23, under Campos who was a witness to the complaint. Marshall informed Mr. Flournoy "no one ever worked light duty, overtime, so just check with Lord in the morning". Lord informed Mr. Flournoy that He "had" to work the overtime. Plaintiff came to work on His holy/off day and sat next to Campos. He took His medication and was sent home after He became drowsy. Campos stated that He was going to inform management that He didn't want Plaintiff at work until He had completed medication.

13. One week later, Mr. Flournoy received an incident report for "sleeping while at work". Mr. Flournoy had not received notice of incident from Wheatland Tube/Zekelman Industries, nor had He been contacted by any union representative prior to Jim Lipka

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

calling Mr. Flournoy to the pre-arranged meeting. <u>Lipka</u> did not offer any right to file a grievance or appeal the incidents. Mr. Flournoy was never given a union book and was unaware of the rules. He received help from Google and returned to the Human Resources office demanding a formal grievance document.

14. <u>Gonzalez</u>, <u>Campbell</u>, <u>Lipka</u> and <u>Kimes</u> were in control of all interviews and meetings relating to the fabricated incident report and grievance process. It was during these meetings that it was revealed <u>Gonzalez</u>, Human Resource Assistant, instead of <u>Campos</u> (Foreman) who the incident alleges was the author, wrote the incident reports. <u>Lipka</u> tried to compel Mr. Flournoy to sign an agreement dismissing the incident if He agreed to waive rights He had or be terminated. <u>Gonzalez</u> had been contacted by Chase bank for verification of employment to purchase a home for His famil, and knew that Mr. Flournoy needed the job to complete the purchase (EX.K). In spite of being leveraged, Mr. Flournoy presented all His evidence amounting to retaliation and discrimination and refused to forfeit His Rights. To succeed in the early stages of this process, Defendants knowingly made false statements to retaliate and deprive Mr. Flournoy fair treatment, not limited to denying knowledge of prescribed medication.

15. Wheatland Tube/Zekelman Industries maliciously went after Mr. Flournoy's unemployment, including appealing the Judges decision, unsuccessfully (Ex.L) all in retaliation for Him complaining against its discrimination and unfair treatment by non-Muslim supervisors.

14.    [*AGE DISCRIMINATION ONLY*] Defendant knowingly, intentionally, and willfully discriminated against the plaintiff.

15.    The plaintiff demands that the case be tried by a jury. ☒   Yes ☐ No

16.    THEREFORE, the plaintiff asks that the court grant the following relief to the plaintiff [*check only those that apply*]

   (a)    ☐  Direct the defendant to hire the plaintiff.

   (b)    ☐  Direct the defendant to re-employ the plaintiff.

   (c)    ☐  Direct the defendant to promote the plaintiff.

   (d)    ☐  Direct the defendant to reasonably accommodate the plaintiff's religion.

   [If you need additional space for ANY section, please attach an additional sheet and reference that section.]

(e) ☐ Direct the defendant to reasonably accommodate the plaintiff's disabilities.

(f) ☒ Direct the defendant to (specify): <u>Pay Compensatory Damages of $400,000.00 USC, Pay Punitive Damages of $500,000.00</u>

(g) ☒ If available, grant the plaintiff appropriate injunctive relief, lost wages, liquidated/double damages, front pay, compensatory damages, punitive damages, prejudgment interest, post-judgment interest, and costs, including reasonable attorney fees and expert witness fees.

(h) ☒ Grant such other relief as the Court may find appropriate.


<u>(Plaintiff's signature)</u>

Michael Flournoy
<u>(Plaintiff's name)</u>

10927 S Hermosa Ave
<u>(Plaintiff's street address)</u>

(City) Chicago (State) Illinois (ZIP) 60643

(Plaintiff's telephone number) ( 312 ) 273-2237

Date: <u>March 6, 2024</u>

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

Rev. 04/05/2018

**#3 Attachment**

**Zekelman Industries**
227 W Monroe St, Suite 2600
Chicago, (Cook County) IL  60606
312-275-1600

**Sergio Gonzelez**
4435 S Western Blvd
Chicago, (Cook County) IL  60609
773-254-0617

**Alejandro Mendoza**
4435 S Western Blvd
Chicago, (Cook County) IL  60609
Phone: unknown

**Ryan Lord**
4435 S Western Blvd
Chicago, (Cook County) IL 60609
312-590-5346

**Keith Campos**
4435 S Western Blvd
Chicago, (Cook County) IL  60609
Phone: unknown

**Wheatland Tube**
4435 S Western Blvd
Chicago, (Cook County) IL  60609
800-257-8182

**Erin Campbell**
4435 S Western Blvd
Chicago, (Cook County) IL  60609
773-366-4729

**Terrance Marshall**
4435 S Western Blvd
Chicago, (Cook County) IL  60609
773-703-1817

**Jim Lipka**
4435 S Western Blvd
Chicago, (Cook County) IL  60609
Phone: unknown

**Justin Kimes**
4435 S Western Blvd
Chicago, (Cook County) IL  60609
312-519-3820

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | EEOC<br><br>FEPA | 440-2024-01618 |

| Illinois Department Of Human Rights | and EEOC |
|---|---|
| *State or local Agency, if any* | |

| I Name *(indicate Mr., Ms., Mrs., Miss, Mx., Dr., Hon., Rev.)*<br>Mr. Michael E. Flournoy | Home Phone | Year of Birth |
|---|---|---|

| Street Address<br>10927 S<br><br>CHICAGO, IL ( | | |
|---|---|---|

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. *(If more than two, list under PARTICULARS below.)*

| Name<br>Wheatland Tube/Zekelman Industries | No. Employees, Members<br>201 - 500 Employees | Phone No. |
|---|---|---|

| Street Address<br>4435 S WESTERN BLVD<br>CHICAGO, IL 60609 | | |
|---|---|---|

| Name | No. Employees, Members | Phone No. |
|---|---|---|

| Street Address | City, State and ZIP Code | |
|---|---|---|

| DISCRIMINATION BASED ON | DATE(S) DISCRIMINATION TOOK PLACE |
|---|---|
| | Earliest: 11/29/2022     Latest: 04/03/2023 |
| Religion, Retaliation | |

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

I began my employment with the respondent on or about August 7, 2022. My last position was Material Handler. During my employment, I complained of discrimination from a supervisor. I was then retaliated against from management and required to work, under duress, on my religious comp day. As the result, I was discharged on or about April 3, 2023.

I believe I have been discriminated against because of my religion, Muslim, and in retaliations, in violation of Title VIII of the Civil Rights Act of 1964, as amended.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct.<br><br>**Digitally Signed By: Mr. Michael E. Flournoy**<br>12/07/2023<br><br>*Charging Party Signature* | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT<br><br>SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE<br>*(month, day, year)* |

Page 1 of 2

CP Enclosure with EEOC Form 5 (11/09)

**PRIVACY ACT STATEMENT:** Under the Privacy Act of 1974, Pub. Law 93-579, authority to request personal data and its uses are:

1. **FORM NUMBER/TITLE/DATE.** EEOC Form 5, Charge of Discrimination (11/09).

2. **AUTHORITY.** 42 U.S.C. 2000e-5(b), 29 U.S.C. 211, 29 U.S.C. 626, 42 U.S.C. 12117, 42 U.S.C. 2000ff-6.

3. **PRINCIPAL PURPOSES.** The purposes of a charge, taken on this form or otherwise reduced to writing (whether later recorded on this form or not) are, as applicable under the EEOC anti-discrimination statutes (EEOC statutes), to preserve private suit rights under the EEOC statutes, to invoke the EEOC's jurisdiction and, where dual-filing or referral arrangements exist, to begin state or local proceedings.

4. **ROUTINE USES.** This form is used to provide facts that may establish the existence of matters covered by the EEOC statutes (and as applicable, other federal, state or local laws). Information given will be used by staff to guide its mediation and investigation efforts and, as applicable, to determine, conciliate and litigate claims of unlawful discrimination. This form may be presented to or disclosed to other federal, state or local agencies as appropriate or necessary in carrying out EEOC's functions. A copy of this charge will ordinarily be sent to the respondent organization against which the charge is made.

5. **WHETHER DISCLOSURE IS MANDATORY; EFFECT OF NOT GIVING INFORMATION.** Charges must be reduced to writing and should identify the charging and responding parties and the actions or policies complained of. Without a written charge, EEOC will ordinarily not act on the complaint. Charges under Title VII, the ADA or GINA must be sworn to or affirmed (either by using this form or by presenting a notarized statement or unsworn declaration under penalty of perjury); charges under the ADEA should ordinarily be signed. Charges may be clarified or amplified later by amendment. It is not mandatory that this form be used to make a charge.

## NOTICE OF RIGHT TO REQUEST SUBSTANTIAL WEIGHT REVIEW

Charges filed at a state or local Fair Employment Practices Agency (FEPA) that dual-files charges with EEOC will ordinarily be handled first by the FEPA. Some charges filed at EEOC may also be first handled by a FEPA under worksharing agreements. You will be told which agency will handle your charge. When the FEPA is the first to handle the charge, it will notify you of its final resolution of the matter. Then, if you wish EEOC to give Substantial Weight Review to the FEPA's final findings, you must ask us in writing to do so within 15 days of your receipt of its findings. Otherwise, we will ordinarily adopt the FEPA's finding and close our file on the charge.

## NOTICE OF NON-RETALIATION REQUIREMENTS

Please **notify** EEOC or the state or local agency where you filed your charge **if retaliation is taken against you or others** who oppose discrimination or cooperate in any investigation or lawsuit concerning this charge. Under Section 704(a) of Title VII, Section 4(d) of the ADEA, Section 503(a) of the ADA and Section 207(f) of GINA, it is unlawful for an *employer* to discriminate against present or former employees or job applicants, for an *employment agency* to discriminate against anyone, or for a *union* to discriminate against its members or membership applicants, because they have opposed any practice made unlawful by the statutes, or because they have made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under the laws. The Equal Pay Act has similar provisions and Section 503(b) of the ADA prohibits coercion, intimidation, threats or interference with anyone for exercising or enjoying, or aiding or encouraging others in their exercise or enjoyment of, rights under the Act.

# U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

**Chicago District Office**
230 S Dearborn Street
Chicago, IL 60604
(800) 669-4000
Website: www.eeoc.gov

## DETERMINATION AND NOTICE OF RIGHTS
(This Notice replaces EEOC FORMS 161, 161-A & 161-B)

Issued On: 12/07/2023

**To:** Michael E. Flournoy

CHICAGO, IL

Charge No: 440-2024-01618

EEOC Representative and email:   FATIMA SANDOVAL
Investigator
fatima.sandoval@eeoc.gov

### DETERMINATION OF CHARGE

The EEOC issues the following determination: The EEOC will not proceed further with its investigation and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

### NOTICE OF YOUR RIGHT TO SUE

This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.** Receipt generally occurs on the date that you (or your representative) view this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file a lawsuit based on this charge, please sign in to the EEOC Public Portal and upload the court complaint to charge 440-2024-01618.

On behalf of the Commission,

Digitally Signed By: Diane I. Smason
12/07/2023
Diane I. Smason
Acting District Director

**Cc:** Wheatland Tube/ Zekelman Industries

Please retain this notice for your records.

Enclosure with EEOC Notice of Closure and Rights (01/22)

# INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court **under Federal law**. If you also plan to sue claiming violations of State law, please be aware that time limits may be shorter and other provisions of State law may be different than those described below.)*

### IMPORTANT TIME LIMITS – 90 DAYS TO FILE A LAWSUIT

If you choose to file a lawsuit against the respondent(s) named in the charge of discrimination, you must file a complaint in court **within 90 days of the date you *receive* this Notice**. Receipt generally means the date when you (or your representative) opened this email or mail. You should **keep a record of the date you received this notice**. Once this 90-day period has passed, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and the record of your receiving it (email or envelope).

If your lawsuit includes a claim under the Equal Pay Act (EPA), you must file your complaint in court within 2 years (3 years for willful violations) of the date you did not receive equal pay. This time limit for filing an EPA lawsuit is separate from the 90-day filing period under Title VII, the ADA, GINA, the ADEA, or the PWFA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA, the ADEA or the PWFA, in addition to suing on the EPA claim, your lawsuit must be filed within 90 days of this Notice and within the 2- or 3-year EPA period.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Filing this Notice is not enough. For more information about filing a lawsuit, go to https://www.eeoc.gov/employees/lawsuit.cfm.

### ATTORNEY REPRESENTATION

For information about locating an attorney to represent you, go to:
https://www.eeoc.gov/employees/lawsuit.cfm.

In very limited circumstances, a U.S. District Court may appoint an attorney to represent individuals who demonstrate that they are financially unable to afford an attorney.

### HOW TO REQUEST YOUR CHARGE FILE AND 90-DAY TIME LIMIT FOR REQUESTS

There are two ways to request a charge file: 1) a Freedom of Information Act (FOIA) request or 2) a "Section 83" request. You may request your charge file under either or both procedures. EEOC can generally respond to Section 83 requests more promptly than FOIA requests.

Since a lawsuit must be filed within 90 days of this notice, please submit your FOIA and/or Section 83 request for the charge file promptly to allow sufficient time for EEOC to respond and for your review.

**To make a FOIA request for your charge file**, submit your request online at https://eeoc.arkcase.com/foia/portal/login (this is the preferred method). You may also submit a FOIA request for your charge file by U.S. Mail by submitting a signed, written request identifying your request as a "FOIA Request" for Charge Number 440-2024-01618 to the

Enclosure with EEOC Notice of Closure and Rights (01/22)

District Director at Diane I. Smason, 230 S Dearborn Street , Chicago, IL 60604.

**To make a Section 83 request for your charge file**, submit a signed written request stating it is a "Section 83 Request" for Charge Number 440-2024-01618 to the District Director at Diane I. Smason, 230 S Dearborn Street , Chicago, IL 60604.

You may request the charge file up to 90 days after receiving this Notice of Right to Sue. After the 90 days have passed, you may request the charge file only if you have filed a lawsuit in court and provide a copy of the court complaint to EEOC.

For more information on submitting FOIA requests, go to https://www.eeoc.gov/eeoc/foia/index.cfm.

For more information on submitted Section 83 requests, go to https://www.eeoc.gov/foia/section-83-disclosure-information-charge-files.

 Gmail

**Michael Flournoy**

## HR

**Michael Flournoy** ·                                    n>                                 Wed, Nov 30, 2022 at 9:44 PM
To: erin.campbell(
Cc: "Gonzalez, Sergio" ·                                   |>
Bcc: Michael Flournoy

This is a complaint against Foreman Alejandro Mendoza which alleges discrimination, unfair treatment, and the maintenance of unsafe work practices. This complaint further highlights how Mr. Mendoza's actions affect Wheatland Tube's seamless production and its ability to keep full time employees to meet its production demands (bottom-line) through intimidation. I am requesting the replacement of, and investigation into Mr. Mendoza's acts of discrimination, unfair treatment as well as his role in the termination/resignation of African American employees who have quit after experiencing Mr. Mendoza intimidation.

On 11/29/22, I was tasked with material handling in Building One. I worked with employee "Jose" who explained to me what needed to be done, and worked alongside Me prepping Blue/Red tubing . I worked the third shift until 2:16 am, when I obtained permission from Foreman Terrance Marshall to take My lunch break. Mr. Mendoza made a call to Foreman Terrance which resulted in the termination of My lunch break under the guise that I'd been gone on break to long.

After about 3 am, I spoke with Mr. Mendoza for the first time that night, inquiring why My lunch was terminated. Mr. Mendoza's response to this question was that he'd been "helping 'Jose' to prevent his line from backing up since 2:10 am." He then expressed his dislike of My inquiry by stating that I was "supposed to be working both lines and moving the pipes." I reminded Mr. Mendoza that this would be impossible as My first time ever working Building One and that it would be impossible for Me to be able to move with caution at the pace required.

On 11/30/22, I was called into the office by Foreman Terrance. Mr. Mendoza was in the office and wanted to speak to me about the acts of 11/29. Foreman(s) Terrance Marshall, Keith Campos, and Mr. Mendoza were present for this meeting. The first question asked by Mr. Mendoza was "how was I racist towards you?" I attempted to answer Mr. Mendoza's question until he cut Me off in speech. After over four attempts, I was able to explain how it was unfair to say that "Jose" who is of Mexican decent as due help, care, courtesy from him but I as an African American was said to be responsible for the task "Jose" was doing and My task. I further expressed My concerns with safety as an employee fresh off of probation, who needed to be cautious in that I trained off 90 days as a 'Truck Loader'.

Mr. Mendoza explained that his favoritism for "Jose" was because he "hadn't finished training him in driving the forklift." I then attempted to point out that Mr. Mendoza failed to consider My safety in the same light as he did Jose in that he hadn't trained Me in any of the tasks needed to be responsible for the job at all. Mr. Mendoza refused to see the difference between "Jose", a Mexican, who has worked for the company for years needed more training and I couldn't even ask questions as an African American or receive the same level of care/training prior to being held responsible for the task.

Mr. Mendoza tried to get Me to recant on My statement of being handled with racism on more than one occasion. One of which he alleged that he personally told Me that My task was to move all the pipe (as above) and I "huffed and puffed" refusing to do so. I again reminded him that I had been working for half the shift before I even talked to him and the only person who could've told Me the task was Jose, of which he did not deny.

I told Mr. Mendoza on more than one occasion that "not treating/considering Me the same way he did Mexicans, as a Foreman was unfair treatment, and thinking that an African American new employee should be left to figure out the job, possibly damaging the machines/materials was in fact an act of racism". Mr. Mendoza told Me that he didn't want his name to be connected with any racism but refused to say that he would change his practices or acknowledge them as wrong to receive. As the result of My refusal to withdraw My complaint of unfair treatment, racism, and discrimination, Mr. Mendoza requested Foreman Terrance to let Me "work with him on the ridged line" which is another place I hadn't been trained to run. I again reminded Mr. Mendoza that he hadn't trained Me and that I could do the job under the guidance of someone who knew the job, but wasn't confident that I could complete the task on My own, absent training.

In closing, the act of under-training is a tool that can be used to get new employees fired, hurt, and cause property damage. Upon information and belief, Mr. Mendoza has treated other employees of African American decent the same or worse, abusing his office as Foreman. Mr. Mendoza has refused to acknowledge his actions as wrong and has made it clear that he will do the same actions in the future if he is not made to stop.

In support of my complaint, please review the relevant video cameras of Building One and my work record of training/attendance to attest that I am an employee who comes to work with intentions on doing my very best. I should not be subjected to any forms of racism or discrimination by any Foreman as it is inconsistent with his job description and tasks and obstructs my ability to ensure that the company that pays me to do my very best is in fact making money. Please investigate these allegations and take into consideration any and all African Americans who have quit or been terminated under Mr. Mendoza's leadership.

I enjoy working for Wheatland Tube and appreciate the opportunity they have given me through this employment and look forward to doing my best without fear of retaliation for this complaint. Please feel free to contact me with any questions and thank you in advance for providing the means to report this wrong. Hearing Requested

Best,
Mr. Flournoy, Michael

Sent from Mail for Windows

5:06

TS

Terrace >

Nov 29, 2022 at 1:45 AM

Same lunch?

At least 45 mins that way the mill don't back up I'm not sure how fast it's running but ik 1/2 don't run that fast just make sure the line clear that way you can time it

Hey Mike go back at 2:30 for me he calling saying you been gone 30mins already

Yo Mike gone go back he calling I owe you one

+ Text Message

5:07



TS

Terrace >

Yo Mike gone go back he calling I owe you one

They be lunch watching on the times

We gotta take turns with this one. I didn't even eat my food. Can't do that all week

Nobody has to go all week but so you know that's how it's gone been when you go to mill 4 nobody suppose to get a hr so that's why they be watching it happens to everybody not just you

+ Text Message

EX. C

5:15



SW

Sergio >

Text Message
Dec 1, 2022 at 1:57 PM

Michael, hey this is Sergio HR Assistant at Wheatland Tube. Can you please come to the HR office at 5am tomorrow please? I would like to discuss your situation you submitted to Erin and I this morning. Please keep everything confidential

Dec 1, 2022 at 4:10 PM

Yes sir. See you guys there

Thanks Michael. I'll see you tomorrow

Text Message

5:20



Ryan ›

iMessage
Feb 3, 2023 at 3:19 AM



**Hadith on Jumu'ah: Friday is an Eid, dress nice, wear per...**
abuaminaelias.com

This is Mr Flournoy, I'm sending you this text with a link explaining my religious obligations for Fridays. In short I am not able

iMessage

(Ex. D)

5:21

Ringer

Ryan >

to meet the scheduled 90 day mill 4 work schedule that I have been informed of at the start of this shift. I took this job in part due to the Friday/Saturday off days with the understanding that some Fridays may be required. There is no way I can practice my faith not limited to the month of Ramadan with this type of requirement. I appreciate the $1 raise and the overtime but a major part of why I'm able to work wherever I'm asked and complete any tasks without missing a day

iMessage

5:21

RL

Ryan >

without missing a day is because of my faith in Allah.
If there's any other position that you have for me with respect to my religious beliefs I would appreciate it regardless of the pay. I'm willing to work ot during the week anytime as needed but I'm of little good at work/home absent my religious practice/beliefs.
Please advise.
Best.
Mr Flournoy

Mar 26, 2023 at 8:17 PM

Good Evening Mike

+ iMessage

Ex. E

5:22

**JU**

Jay >

iMessage
Mar 15, 2023 at 11:23 PM

This mike. Did you speak to anyone about me working Friday ot?

Imma have it fixed by tomorrow

K

Mar 16, 2023 at 4:23 PM

You don't have to come in Friday only if you want too

Thanks Brodie

No prob

iMessage

 Gmail

Michael Flournoy

## Mr. Flournoy / work injury

**Michael Flournoy**
To: Sergio Gonzalez ·

Sun, Feb 26, 2023 at 7:51 PM

This email is for your records in regards to my absence from work Wednesday, Thursday and Sunday.

Tuesday/Wednesday work day I hurt my shoulder placing 4-2x4's on pipes. The 2x4s were stacked in sets of two due to the improper fork size on the assigned forklift I used.

I was given a written notice by Jim about my points in the presence of my supervisor Terrance and a union representative. I informed Jim of the hazard in having to stack the 2x4s in that manner due to the improper forks and that I didn't have the body to lift the (wet) 2x4s properly at the pace required to keep up with production. Jim told me that I looked like I was in great shape and that I should use a ladder for the task.

I asked Jim to "give it a try" to better understand his advice was not practical. He told me he "wasn't here for that", which I understood to mean "my safety concerns". I then requested him to "please allow my concerns to rattle in his hard hat".

The following day (Wednesday morning) when I awoke, I had pain in my left shoulder. My wife attempted to nurse me back with Aleve and heat compressions. The pain was still bad when I lifted my arm. I called off that day and continued the treatment. After attempting the same as above on Thursday to no avail, I went to the doctor on Friday as documented in the attachment to this email.

The doctor recommended a MRI to check my tissues, etc. Because of the swelling/color of my shoulder, I was given some medication for inflammation (5-days) and instructed not to operate any heavy machinery including a car while taking the medication. A return to work letter was given for 2/27.

Please advise on how to proceed as to whether I should return to work on the 27th or wait until completion of the medication. And please assist in removing the hazard. I didn't know I was hurt until after the shift ended. The doctor said that shoulder injuries are so bad because often people don't know they are hurt.

Please contact me with any questions and inform me of the workers compensation process. Thanks in advance.
Best.

Mr. Flournoy II
>
>

📎 **M Flournoy Work injury -1.pdf**
3394K View as HTML Scan and download

 Gmail

Michael Flournoy ·

## Mr. Flournoy / work injury

Gonzalez, Sergio ‹
To: Michael Flournoy

Mon, Feb 27 at 5:48 AM

Morning! I forwarded to our safety manager!

Sent from my Verizon, Samsung Galaxy smartphone
Get Outlook for Android

**From:** Michael Flournoy ·
**Sent:** Sunday, February 26, 2023 7:51:30 PM
**To:** Gonzalez, Sergio ·
**Subject:** Mr. Flournoy / work injury

[Quoted text hidden]

8

**EMPLOYEE INCIDENT REPORT**

## This Report is to be Completed by the Employee

Employee Name: ZI Facility: 44th Western Chgo, Ill

MR. Flouenoy Last First Michael

Address:

Street City State Zip Code

Home Phone # Cell Phone #

Date of Birth: 08/20/ Age: , Sex: M Marital Status: M Number of Dependents: Personal

Physician: DR. Mahesh Shah Physician's Address: 1357 W. 103Rd

Date of Hire: 11-7-23 Clock Number: #12146 Full or Part Time: Full

| | | |
|---|---|---|
| Department: Shipping 3Rd Shift | Employee Job Title: Mat. Handler | |
| Date & Time Employer Notified of Incident: | Who was Notified?: | |
| Date of Incident: 2/21-22/23 Time of Incident: 10:45- 12:30 | AM/PM Time Employee Began Work: 10.00 | AM / PM |

Where Did The Incident Occur? (Location) Building #2

Exactly What Were You (Employee) Doing When The Incident Occurred? I was placing double 2x4's on stack of Pipes in prep. for next load in bulD #2

Exactly How Did The injury Occur? trying to place 2x4's far above my head on stack of pipes, 2x4's Started to Fall and attempted to Prevent them from Falling and Hitting me. use of improper Forklift Required doubling 2x4's to make sure Forks Clear

Nature of Injury & Parts of Body Affected: left shoulder

Any Equipment, Materials, or Chemicals being used? Were Safeguards or Safety Equipment Provided? YES - YES

Were Safeguards or Safety Equipment Used? Standard PPE

| Employee seen by or sent to a Physician? | Yes | No | | |
|---|---|---|---|---|
| | When? | | Where? | |
| Was First Aid Administered? | | Yes | No | By Whom? |
| | When? | | Where? | |
| Were you (Employee) hospitalized overnight? | | Yes | No | |
| Name of Anyone Who Witnessed The Incident: | | | None | |

**Recommendations (Employee's) for Prevention of Similar Occurrence:**

Assure that no Employee has to use double 2x4's For Anything At Any time; Provide a process of/and purchase dry 2x4's to assure they are not extra heavy due to being wet; Provide a System that prevents Employees From having to extend their Reach Far above their heads or stand on tip of toes to Complete Any task lifting any weight; Assure training For Any task Employee's have in their Job description that they are not Required to "Figure it Out"

| Signature of Employee | Date | Signature of Supervisor | Date |
|---|---|---|---|
| *[signature]* | 2/27/23 | | |

Received By:

| Atlas Tube | Picoma Industries | Sharon Tube | Wheatland Tube | Western Tube |
|---|---|---|---|---|
| Z-Modular | | | | |

For Office Use
Only

2:11 ✈

.ıl 5G 🔋



JK

Justin >

Hi Michael this is Justin Kimes

Office

Mon, Feb 27 at 4:29 PM

Please text me to let me know when you send me those records from your doctor's visit today as well as those completed forms.

It's important I see those records as soon as possible. Also the medical release form with it please.

iMessage 🎤



 Gmail

Michael Flournoy

## Mr. Flournoy / Work Injury

Michael Flournoy ·
To: <Justin.Kimes

Mon, Feb 27 at 6:17 PM

M Flournoy Work Injury –3.pdf

# ACKNOWLEDGEMENT OF RECEIPT OF THE FOLLOWING

- NOTICE OF AVAILABILITY OF TRANSITIONAL DUTY WORK
- FMLA COORDINATION NOTICE (U.S. Locations Only)
- HOW TO SCHEDULE FOLLOW UP TREATMENT
- AUTHORIZATION FOR RELEASE OF INFORMATION

# NOTICE OF AVAILABILITY OF TRANSITIONAL DUTY

Atlas Tube, Picoma Industries, Sharon Tube, Wheatland Tube, Western Tube & Z-Modular (Divisions of Zekelman Industries) offer Transituonal-Return-To-Work (TRTW) for our injured workers. TRTW is a program where injured employees are accommodated for their temporary physical restrictions. The process involves modifying workstations, and/or job duties (including working from home) to keep the employee as a productive part of the organization. We feel that TRTW is a valuable tool in rehabilitating injured employees, and returning them to full duty as soon as possible. Zekelman Industries will make every effort possible, to accommodate all work restrictions.

# FMLA NOTIFICATION (U.S. Locations Only)

You are hereby advised that all absences due to your Work Injury will be applied towards your FMLA leave entitlement of twelve (12) weeks of leave per twelve (12) month period if you are eligible. An eligible employee under FMLA is considered as one who has worked for Zekelman Industries for at least one year and for 1,250 hours over the previous twelve months. Such employee is eligible for up to twelve (12) weeks of unpaid, job-protected leave for certain family and medical reasons as defined in the Family and Medical Leave Act of 1993. The twelve month period when leave is available is a rolling twelve months period measured backward from the date of the requesting employee's leave.

# HOW TO SCHEDULE FOLLOW-UP TREATMENT

- All follow-up appointments for work injuries are to be scheduled after or before your scheduled work shift.
- All therapy sessions for work injuries are to be scheduled after or before your scheduled work shift.
- The only exception to the above is with prior approval from the Safety Department.

# AUTHORIZATION FOR RELEASE OF INFORMATION

The undersigned authorizes any licensed physician, medical practitioner, pharmacist, hospital, clinic, psychiatrist, psychologist, or other medically-related facility having information available as to medical history, diagnosis, treatment, and prognosis to give any and all such information for which I am submitting a workers' compensation claim to Zekelman Industries (Atlas Tube, Picoma Industries, Sharon Tube, Wheatland Tube, Western Tube, Z-Modular) or its' designated representatives.

I understand the information obtained by use of the authorization will be used to determine eligibility for workers' compensation benefits. Any information obtained through this authorization will be released as necessary for the processing of my claim.

Since this authorization is being provided with regard to a workers' compensation claim, HIPAA is not applicable to this request. I agree that a photographic copy of the authorization shall be as valid as the original. I agree this authorization shall be valid during the pendency of my claim. I know that I may request a copy of this authorization.

| Injured Worker: | | Clock #: 12146 |
|---|---|---|
| Date of Injury: | 2/21-22/23 | ZI Facility: 4478 western Ave |
| Date of Birth: | | 8/20/75 |
| Signature: | | Date: 2/27/23 |

*Injured Worker's Signature*

Atlas Tube
Z-Modular

Picoma Industries

Sharon Tube

Wheatland Tube

Western Tube



 Gmail

Michael Flournoy <m

## Claim Nbr: FYT7769 – ZEKELMAN INDUSTRIES INC – Claimant Name: MICAHEL E FLOURNOY – Travelers Indemnity Company of Connecticut

2 messages

Moos, Erika <EMOOS
To:

Fri, Mar 3 at 11:32 AM

Mr. Flournoy,

Thank you for speaking to me earliest about your upcoming appointment. Please provide the specialist name and contact information as well as the time of appointment on 03/08/2023.

You employer requests Nurse Case Management to attend all medical appointments for any claims involving restricted or modified duty, lost time days or potential surgery to attend any and all appointments until the employee is cleared to return to work.

You are not required to have the nurse in the examination room with you but she/he has the right to speak with you and the doctor afterwards.

Best regards,

Erika Moos | Claim Professional | Workers Compensation

Travelers

Lake Michigan Claim Center

W·

Mailing Address:

Travelers

Dallas, TX 75266-0456



This message (including any attachments) may contain confidential, proprietary, privileged and/or private information. The information is intended to be for the use of the individual or entity designated above. If you are not the intended recipient of this message, please notify the sender immediately, and delete the message and any attachments. Any disclosure, reproduction, distribution or other use of this message or any attachments by an individual or entity other than the intended recipient is prohibited.



EX I

2:12

Justin >

...is there a
contact person? The
spam filter is on and I
may miss the call

Wed, Mar 8 at 12:07 PM

Thank you Michael. I
will let Ryan know to
expect your return
Thursday night.

iMessage

EX. 5

 Gmail

Michael Flournoy

## Mr. Flournoy / work injury

**Michael Flournoy**                                                    Mon, Feb 27 at 5:13 PM
To: <Justin.Kimes(          >

Per our conversation/for your review.

Best

Mr. Flournoy II


M Flournoy Work Injury-2.pdf

 **Advocate Medical Group**

**Advocate Aurora Health Care**
**9831 S WESTERN AVE**
**CHICAGO IL 60643-1971**
**Dept Phone: 773-445-3500**
**Dept Fax:**

February 27, 2023

Patient:       **Michael Flournoy**
Date of Birth: 8/20/     ;
Date of Visit: 2/27/23

To Whom it May Concern:

Michael Flournoy was seen in my clinic on 2/27/23.

Please excuse Michael for his absence from work on the date listed above to be able to make his appointment. Michael Flournoy may return to work once he is cleared by his PCP or ortho

Sincerely,

Shantala Sreerama , MD

**Medical information is confidential and cannot be disclosed without the written consent of the patient or his representative.**

ne, may increase your risk for stomach bleeding. Limit alcohol
op smoking. This medication may make you more sensitive to the
mit your time in the sun. Avoid tanning booths and sunlamps.
unscreen and wear protective clothing when outdoors. Tell your
right away if you get sunburned or have skin blisters/redness.
having surgery, tell your doctor or dentist about all the products
e (including prescription drugs, nonprescription drugs, and
products). Older adults may be at greater risk for
ch/intestinal bleeding, kidney problems, heart attack, and stroke
ising this drug. Before using this medication, women of
earing age should talk with their doctor(s) about the benefits and
Tell your doctor if you are pregnant or if you plan to become
int. This medication may harm an unborn baby and cause
ms with normal labor/delivery. It is not recommended for use in
incy from 20 weeks until delivery. If your doctor decides that you
o use this medication between 20 and 30 weeks of pregnancy,
ould use the lowest effective dose for the shortest possible time.
hould not use this medication after 30 weeks of pregnancy. This
ation passes into breast milk. Consult your doctor before
-feeding.

INTERACTIONS:
nteractions may change how your medications work or increase
sk for serious side effects. This document does not contain all
le drug interactions. Keep a list of all the products you use
ing prescription/nonprescription drugs and herbal products) and
it with your doctor and pharmacist. Do not start, stop, or change
sage of any medicines without your doctor's approval. Some
cts that may interact with this drug are: aliskiren, ACE inhibitors
as benazepril, lisinopril), angiotensin II receptor blockers (such as
n, valsartan), cidofovir, corticosteroids (such as dexamethasone,
sone), lithium, methotrexate, "water pills" (diuretics such as
mide). This medication may increase the risk of bleeding when
with other drugs that also may cause bleeding. Examples include
latelet drugs such as clopidogrel, "blood thinners" such as
tran/enoxaparin/warfarin, among others. Check all prescription
nprescription medicine labels carefully since many medications
n pain relievers/fever reducers (aspirin, NSAIDs such as
fen, ketorolac, naproxen). These drugs are similar to diclofenac
ay increase your risk of side effects if taken together. However, if
doctor has directed you to take low-dose aspirin to prevent heart
or stroke (usually 81-162 milligrams a day), you should keep
the aspirin unless your doctor instructs you otherwise. Ask your
or pharmacist for more details.

DOSE:
eone has overdosed and has serious symptoms such as passing
trouble breathing, call 911. Otherwise, call a poison control
right away. US residents can call their local poison control center
00-222-1222. Canada residents can call a provincial poison
l center. Symptoms of overdose may include: severe stomach
low/shallow breathing, extreme drowsiness.

S:
share this medication with others. Lab and/or medical tests (such
mplete blood count, liver/kidney function, blood pressure) may be
while you are using this medication. Keep all medical and lab
tments. Consult your doctor for more details. Lifestyle changes
as weight loss if needed, strengthening/conditioning exercises)
elp improve your flexibility and joint function. Consult your doctor
ecific instructions.

ED DOSE:
miss a dose, take it as soon as you remember. If it is near the
the next dose, skip the missed dose. Take your next dose at the
time. Do not double the dose to catch up.

AGE:
at room temperature in a tightly closed container away from light
and moisture. Do not store in the bathroom. Keep all medications away from children and pets. Do not flush medications down the toilet or pour them into a drain unless instructed to do so. Properly discard this product when it is expired or no longer needed. Consult your pharmacist or local waste disposal company.
Information last revised July 2022. Copyright(c) 2023 First Databank, Inc.

A Simple Way to Manage your Prescriptions
CVS Pharmacy has made it easier for you to read and follow your prescription information. We use icons to show meaningful pharmacy advice on when to take each medication dose, so your prescriptions can work harder for you.

As always, your CVS Pharmacy team welcomes your questions.

Any questions about your medication? Contact your pharmacist:
Razan Tadros, RPh
TEL: (773) 239-8041

Keep Out of Reach of Children. Important Disclaimer: The side effects described in this document do not reflect all the possible risks that could be caused by this medication. For further information, please consult with your physician about the uses, precautions and risks of the medication specific to your health. This information is obtained from First DataBank for use as an educational aid.

Promised: 2/27/23, 11:50 AM
Scripts: 01

FL 89

27 1341712 000 000 00 0000750

Flournoy, Michael    Counsel New Drug

## Prescription Information

SEE DIRECTIONS

A PHARMACY ADVICE
See back for more information

**DICLOFENAC SOD EC**
**75 MG TAB**
Common brand(s): Voltaren

Take 1 tablet by mouth 2 times a day with food for 7-10 days then as needed start from tomorrow

Important Information
- May take with food to lessen chance of stomach upset.
- Swallow whole. Do not chew or crush.
- No aspirin without md approval. Continue low dose aspirin unless md stops.
- Before using alcohol with this drug, talk to your healthcare professional.
- May cause drowsiness and dizziness. Careful using vehicle, vessel, machines.

## Receipt & Refill Information

CVS Pharmacy    STORE#: 2845
1030 W. 103rd St.
Chicago IL 60643

STORE TEL: (773) 239-8041
RX: 00

INSURANCE INFORMATION:
FEDERAL EMPLOYEE PROG FP
[illegible] [illegible] Auth: 21035101-1723109399

RETAIL PRICE: $35.69
TAX: $0.19

**DICLOFENAC SOD EC**
**75 MG TAB**

NDC: 16571-0201-06    DAW: 0
QTY: 40 EA
CAP: Safety    MFR PKG: Yes
REFILL: 0 Refills
MFR: RISING PHARM
PRESCBR: Shantala Sreerama
DAYS SUPPLY: 20
DATE FILLED: 2/27/23
AMOUNT DUE: $7.50

## Notes from the Pharmacy

CVS pharmacy    OPEN HERE

Your Medication List as of March 13, 2023 10:36 AM

ⓘ If you have any questions, ask your nurse or doctor.

 diclofenac 75 MG EC tablet
Commonly known as: VOLTAREN
For diagnoses Injury of left shoulder, subsequent encounter

Take 1 tab 2 times a day with food for 7-10 days then as needed start from tomorrow

econazole 1 % cream
Commonly known as: SPECTAZOLE

APPLY TWICE DAILY TO RASH X 3 WEEKS.

 gabapentin 100 MG capsule
Commonly known as: NEURONTIN
For diagnoses: Paresthesia of left arm, Numbness of fingers, Loss of feeling or sensation
Started by: Helen N Tcheng, MD

Take 1 capsule by mouth in the morning and 1 capsule at noon and 1 capsule in the evening.

 predniSONE 20 MG tablet
Commonly known as DELTASONE
For diagnoses: Chronic rhinitis, Sinus pressure
Changed by: Helen N Tcheng, MD

Take one tablet, twice daily for 10 days, the take one tablet, once daily for 7 days. DO NOT TAKE ON AN EMPTY STOMACH.
What changed Another medication with the same name was added. Make sure you understand how and when to take each.

 predniSONE 10 MG tablet
Commonly known as: DELTASONE
For diagnoses Paresthesia of left arm, Numbness of fingers, Loss of feeling or sensation, Injury of left shoulder, sequela
Changed by: Helen N Tcheng, MD

1 tab po bid x 2 days then 1 tab po qd x 3 days
What changed. You were already taking a medication with the same name, and this prescription was added. Make sure you understand how and when to take each.

terbinafine 250 MG tablet
Commonly known as LamISIL

Take 250 mg by mouth daily.

⊕ * This list has 2 medication(s) that are the same as other medications prescribed for you. Read the directions carefully, and ask your doctor or other care provider to review them with you.

(EX. K)

5:17

SW

Sergio >

Mar 15, 2023 at 2:08 PM

Michael, are you applying for a mortgage loan? Payroll called me to just verify with you since they received a employment verification letter from CHASE. Sometimes banks outsource that service to 3rd parties so we just want to make sure it's you before we verify anything –Sergio

Yes I am. Thanks

Perfect! We just wanted to double

+    Text Message

5:17

**SW**

Sergio >

Yes I am. Thanks

Perfect! We just wanted to double check before we proceed. Thanks!

Mar 20, 2023 at 1:08 PM

Hey Sergio, I'm at the office door to file my grievance on the proper form. Can you please let me in. I rung the doorbell...

Are you still there?

Sorry was in meetings

I'm in Stan office

Text Message

**Illinois Department of Employment Security**
Appeals - Chicago
33 S State St - 8th Floor
Chicago, IL 60603
Phone: (800) 244-5631 · TTY: (312) 793-3184
www.ides.illinois.gov

*Ex. L*



NCZXX00SN0008296910101010

MICHAEL E. FLOURNOY
10927 S HERMOSA AVE
CHICAGO, IL 60643-3409

9 / 8289

| | |
|---|---|
| Date Mailed: | 06/29/2023 |
| Claimant ID: | 9357002 |
| Docket Number: | 2314734 |
| Appeal Filed Date: | 05/09/2023 |
| Date of Hearing: | 06/27/2023 |
| Type of Hearing: | Telephone |
| Place of Hearing: | Chicago |

## Administrative Law Judge's Decision
**(Este es un documento importante. Si usted necesita un intérprete, póngase en contacto con el Centro de Servicio al Reclamante al (800) 244-5631.)**

**Claimant**
MICHAEL E. FLOURNOY
10927 S HERMOSA AVE
CHICAGO, IL 60643-3409

**Employer Appellant**
JOHN MANEELY CO JOHN MANEELY CO
c/o UC EXPRESS ADP, INC

**Employer's Agent**
C/O UC EXPRESS
PO BOX 66744
SAINT LOUIS, MO 63166-6744

**Appearances/Issues/Employer Status:** The claimant and employer appeared and testified. The claimant appeared without a representative. The employer was represented by a Service Firm. Whether the claimant was discharged for misconduct connected with the work? See 820 ILCS 405/602A. The employer is a party to the appeal.

**Findings of Fact:** The claimant worked full time from November 2022 - April 2023 as a material handler, earning $21.10 an hour, at the time of his discharge. The claimant was discharged for sleeping on the job, violating the employer's Rules of Conduct policy. The claimant was aware of the policy.

On 3/10/23, the claimant was found sleeping while at work. He was at a desk, doing paperwork. The claimant admits to dozing off, because of medication that he was taking, due to a work injury. The medication caused drowsiness. The claimant testified that he did not intentionally go to sleep. Sleeping on the job is viewed as an intolerable offense (per the employer's policy), where an employee can be immediately terminated. The employer presented the claimant with a last chance agreement, but the claimant refused to sign. He did not agree with all the terms in the agreement. The claimant was discharged.

**Conclusion:** 820 ILCS 405/602A provides that an individual shall be ineligible for benefits for the weeks in which he has been discharged for misconduct connected with his work and, thereafter, until he has become re-employed and has had earnings equal to or in excess of his current weekly benefit amount in each of four calendar weeks. The term "misconduct" means the deliberate and willful violation of a reasonable rule or policy of the employing unit, governing the individual's behavior in performance of his work, provided such violation has harmed the employing unit or other employees or has been repeated by the individual despite a warning or other explicit instruction from the employing unit.

Willful conduct is a conscious act made in violation of the company procedures, when the employee knows it is against the procedures. Wrobel v. Illinois Department of Employment Security 344 Ill.App.3d 533 (1st Dist. 2003)

602A Misconduct is limited to acts by an employee that are intentional. Based on the evidence presented, claimant's dozing off/sleeping is viewed as an unconscious act. The claimant did not choose to sleep. The claimant was taking medication that caused him drowsiness. There may have been a good business reason for the employer to discharge the claimant, but the claimant did not take deliberate and willful steps to go to sleep. Thus, claimant's actions are not viewed as misconduct. He is eligible for benefits under Section 602A of the Illinois Unemployment Insurance Act.

Accordingly, based on a preponderance of evidence, the claimant was not discharged for misconduct in connection with the work. He is eligible for benefits under Section 602A of the Illinois Unemployment Insurance Act.

**Decision:** The Local Office Determination is AFFIRMED. Pursuant to 820 ILCS 405/602A, the claimant is eligible for benefits, as to this issue only, from 04/02/2023.

MICHAEL E. FLOURNOY                                06/29/2023

YAQUINA R. BURL, Administrative Law Judge
Appeals - Chicago
Fax: (312) 338-0378

## FURTHER APPEAL RIGHTS

**A. LATE APPEAL:** If this appeal was dismissed without a scheduled hearing on a finding the appeal was not filed in a timely manner under the provisions of 56 Ill. Adm. Code 2720.207, this dismissal may be appealed to the Board of Review.

**B. FAILURE TO APPEAR:** IF YOU FAILED TO APPEAR AT THE HEARING, then you may request a rehearing of the appeal, but only if you failed to appear. <u>Your request for a rehearing must state the reason/s you did not attend the hearing and why you did not request a continuance (or why a continuance was erroneously denied) (See 56 Ill. Adm. Code 2720.255(e) (1))</u> A request for rehearing must be made within 10 days of the scheduled hearing or first receipt of notice of hearing, whichever is later. A request for rehearing must be made in writing, to the Appeals Division, 33 S State St - 8th Floor, Chicago, IL 60603, directed to the referee Administrative Law Judge whose name appears on this decision. A request for rehearing may also be made by fax or email to the referee Administrative Law Judge.

You may also file an appeal to the Board of Review. It must be in writing and filed within 30 days from 06/29/2023. **See paragraph C. below.**

**C.** If the decision is against you then you may file a further Appeal to the Board of Review. An appeal to the Board of Review must be in writing and filed within 30 days from 06/29/2023. The appeal to the Board of Review must be mailed to the Board of Review at 33 S State St, 9th Floor, Chicago, IL, 60603 or by fax at (630) 645-3731.

**TO:** MICHAEL E. FLOURNOY, Claimant
**TO:** C/O UC EXPRESS, Employer Agent

**CC:** JOHN MANEELY CO c/o UC EXPRESS ADP, INC, Employer

L11L                          Page 2 of 2                          APL011L