UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MICHAEL FLOURNOY, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 24-cv-01896 |
| | ) | |
| v. | ) | |
| | ) | |
| WHEATLAND TUBE, LLC and | ) | |
| ZEKELMAN INDUSTRIES, INC., | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| Defendants. | ) | |

## AMENDED COMPLAINT

NOW COMES Plaintiff, Michael Flournoy, by and through his counsel, Antonio L. Jeffrey of Jeffrey Law Office, LLC, and complains of Defendants Wheatland Tube, LLC and Zekelman Industries, Inc. and states as follows:

### JURY DEMAND

Plaintiff hereby demands a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all triable issues.

### JURISDICTION & VENUE

1. This action is brought under Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e, et. Seq., and 28 U.S.C. § 1331.

2. Venue is proper in this Court under 28 U.S.C. § 1391, as Defendant resides in this District, all of the events or omissions giving rise to these claims occurred in this District, and Plaintiff was hired, employed, terminated, and harmed by Defendant in this District.

### PARTIES

3. Plaintiff, MICHAEL FLOURNOY ("Plaintiff"), was at all times relevant to this suit an adult, whose Religion is Muslim, residing in Chicago, Illinois. At all times relevant,

1

Plaintiff was employed by Defendant in this District. Plaintiff was hired, employed, terminated, and harmed by Defendant in this District.

4. Defendant, WHEATLAND TUBE, LLC ("Defendant Wheatland"), is a company duly organized and doing business in Illinois, located at 4435 S. Western Blvd. Chicago, IL 60609. It has obligations as an indemnitor of conduct of its employees and officers under at least 745 ILCS 10/2-301, *et seq.* and 745 ILCS 10/9-101, *et seq*. Defendant hired, employed, terminated, and harmed Plaintiff in this District. Defendant employs at least 15 full-time employees and therefore is a covered employer under Title VII.

5. Defendant, ZEKELMAN INDUSTRIES, INC. ("Defendant Zekelman"), is a corporation duly organized and doing business in Illinois, located at 227 W. Monroe St. Chicago, IL 60606. It has obligations as an indemnitor of conduct of its employees and officers under at least 745 ILCS 10/2-301, *et seq.* and 745 ILCS 10/9-101, *et seq*. Defendant hired, employed, terminated, and harmed Plaintiff in this District. Defendant employs at least 15 full-time employees and therefore is a covered employer under Title VII.

**EXHAUSTION OF ADMINISTRATIVE REMEDIES**

6. On or about December 7, 2023, Plaintiff timely filed a Charge of Discrimination against Defendants alleging religion discrimination and retaliation with the Equal Employment Opportunity Commission ("EEOC"), Charge No. 440-2024-01618.

7. On December 7, 2023, the EEOC issued Plaintiff a Notice of Right to Sue for EEOC Charge No. 440-2024-01618.

8. Plaintiff filed his initial Complaint on March 6, 2024.

9. Therefore, Plaintiff's Complaint was filed in a timely manner; and Plaintiff has fully complied with all prerequisites to jurisdiction in this Court.

## UNDERLYING FACTS COMMON TO ALL COUNTS

10. On or about August 7, 2022, Plaintiff was hired by Defendants. He continued in that employment until his wrongful termination on April 3, 2023.

11. At all times relevant to this Amended Complaint, Plaintiff was working in Defendants' facility, located at 4435 S. Western Blvd. Chicago, IL 60609.

12. Plaintiff's religion is Muslim.

13. Defendants were apprised of Plaintiff's religion.

14. At all times relevant to this Amended Complaint, Plaintiff performed his job duties and responsibilities satisfactorily, within Defendants' legitimate expectations.

15. Plaintiff's similarly situated non-Muslim counterparts were not subjected to the same treatment by Defendants as Plaintiff.

16. Defendants discriminated against Plaintiff, its only Muslim African-American employee and retaliated against him for filing a complaint for unfair treatment, discrimination, and the maintenance of unsafe work practices. Defendants further increased Plaintiff's tasks beyond the scope of his employment, attempting to make him quit after he requested a religious comp day, resulting in a work-related injury.

17. Following his hire, Plaintiff successfully completed his probation period on or about November 30, 2022, without incident or infraction. Plaintiff obtained permission to make his Islamic prayer at work from his supervisor, Foreman Terrance Marshall ("Marshall").

18. Plaintiff then filed a formal complaint for discrimination, unfair treatment, intimidation, and unsafe work practices against Foreman, Alexandro Mendoza ("Mendoza"), on November 30, 2022. The incident took place at the Western Blvd. location on November 29, 2022. During this incident, Mendoza told Plaintiff that a Mexican native, only known as "Jose," was due

3

assistance in completion of work assignment and Plaintiff was not. Marshall authorized a lunch break for Plaintiff at or about 2:16 a.m. during the third shift before Mendoza caused the break to be terminated, forcing Plaintiff to work the entire shift without break or performing his required prayers.

19. Plaintiff made a verbal complaint against Mendoza to Marshall at the end of the shift alleging the above violations of unfair treatment in confidence. Marshall then shared the information with Mendoza and Foreman Keith Campos ("Campos") in another setting. On the next night, November 30, 2022, during third shift, Foremen Marshall, Mendoza and Campos, called Plaintiff into the office and through intimidation tried to get him to recant his complaint. Prior to the November 29, 2022 work assignment, Plaintiff had not been trained to complete any of the responsibilities required for Building Two. Mendoza told Plaintiff that "Jose" who had worked for the company more than two years "hadn't been trained properly in the task, which required Mendoza's help, while Plaintiff who had just completed probation as a Truck Loader (different position) was required to "figure it out." Plaintiff raised safety concerns about the dangers of handling the large pipes using the outdated machines and was ignored. Campos and Marshall did not speak against Mendoza's attempts to get the complaints recanted, in support of his position. These foremen held the meeting without a union representative present for Plaintiff.

20. On November 30, 2022, before shift started, Plaintiff emailed Human Resources staff members Sergio Gonzalez ("Gonzalez") and Erin Campbell ("Campbell") a detailed formal complaint about the incident. Gonzalez and Campbell then had Plaintiff report to their office before shift on or about two days later for interviews. Plaintiff requested an investigation into the allegations of misconduct and named Campos, "Jose," and Marshall as witness in addition to requesting video surveillance to support his allegations about timing, place and persons involved.

4

21. Gonzalez and Campbell informed Plaintiff that he would not be allowed to work as a "truck loader" while the investigation took place under Mendoza. Plaintiff was not given any updates on the investigation or formal documentation as to the results of the investigation.

22. On or about January 10, 2023, Plaintiff began to be trained as a material handler in Building Three. Only being told by Marshall that Mendoza no longer worked for the company. Marshall told Plaintiff that "the section he was assigned to was where employees were sent who were either fired or quit, and most quit." Marshall also informed Plaintiff that the company had some special assignments that would require him to work on Friday, which was Plaintiff's off day. Thus, Plaintiff's main reason for accepting employment with Defendants was because it provided Friday/Saturday off, Friday being Plaintiff's Holy Islamic day of worship.

23. Marshall was reminded of Plaintiff's faith though a religious comp request, and Plaintiff was referred to Foreman Ryan Lord ("Lord") who was Marshall's supervisor and made the work schedules. Marshall gave Plaintiff Lord's cell phone number and told Plaintiff to text the religious comp request.

24. On February 23, 2023, Plaintiff sent the request at 3:19 a.m. and was not scheduled by Lord to work on the Holy Day afterward. Plaintiff also had to contact the Union Representative (known as "Jay") to correct scheduling afterwards.

25. Plaintiff began to receive retaliation from the supervisors after the religious comp request. Plaintiff complained to Lord and Foreman Jim Lipka ("Lipka") that the "machines were set to produce pipe at a rate too fast to safely move them, and he could not take lunch or break." Both foremen stated they had "made notes to have someone stationed to help."

26. However, Plaintiff did not receive any help while other non-Muslim employees were not required to work alone. In addition, Plaintiff was required to use a forklift that was ill

5

suited for the job assignment; he was also forced to use double the amount of 2x4's to stack the pipe against training and safety requirements. As a result, Plaintiff sustained a work-related injury on February 21, 2023.

27. Plaintiff reported the injury and sought medical attention. Gonzalez informed him that he had to complete all required forms/steps required by Justin Kimes ("Kimes"), Health and Safety Manager. On February 27, 2023, Kimes requested and started to receive doctors' records. Kimes also requested Plaintiff to work from home against doctors' orders.

28. Plaintiff completed all workers' compensation requirements, including but not limited to allowing a nurse who represented Defendants to attend doctors' appointments and review/receive copies of all medication prescribed.

29. On April 5, 2023, Plaintiff was returned to work light duty from his doctor. Defendants required Plaintiff to return to work under medication while having a zero-tolerance policy to being under the influence of any intoxicants, knowing Plaintiff had been prescribed medication.

30. Further, on March 9, 2023, Plaintiff noticed Lord scheduled him to work on his religious comp/off day, March 10, 2023, under Campos, who was a witness to the complaint. Marshall informed Plaintiff "no one ever worked light duty, overtime, so just check with Lord in the morning." Lord informed Plaintiff that he "had" to work the overtime. Plaintiff came to work on his holy/off day and sat next to Campos. He took his medication and was sent home after he became drowsy. Campos stated that he was going to inform management and he didn't want Plaintiff at work until he had completed medication.

31. One week later, Plaintiff received an incident report for "sleeping while at work." Plaintiff had not received notice of incident from Defendants, nor had he been contacted by any

union representative prior to Jim Lipka calling Plaintiff to the pre-arranged meeting. Lipka did not offer any right to file a grievance or appeal the incidents. Plaintiff was never given a union book and was unaware of the rules. Nevertheless, Plaintiff returned to the Human Resources office and demanded a formal grievance document.

32. Gonzalez, Campbell, Lipka and Kimes were in control of all interviews and meetings relating to the fabricated incident report and grievance process. It was during these meetings that it was revealed Gonzalez, Human Resource Assistant, instead of Campos (Foreman) who the incident alleges was the author, wrote the incident reports. Lipka tried to compel Plaintiff to sign an agreement dismissing the incident if he agreed to waive rights he had or be terminated.

33. Further, Gonzalez had been contacted by Chase Bank for verification of Plaintiff's employment to purchase a home for his family and knew that Plaintiff needed the job to complete the purchase. In spite of being leveraged, Plaintiff presented all his evidence amounting to retaliation and discrimination and refused to forfeit his rights. Defendants knowingly made false statements to retaliate and deprive Plaintiff fair treatment, not limited to denying knowledge of prescribed medication.

34. Defendants maliciously went after Plaintiff's unemployment claim, including appealing the Judge's decision, unsuccessfully all in retaliation for him complaining against its discrimination and unfair treatment by non-Muslim supervisors.

35. Because of Plaintiff's religion (Muslim), Plaintiff was subjected to disparate treatment, discrimination, harassment, and termination of his employment.

36. Because Plaintiff reported discrimination and retaliation, exercising a right and protected activity, he was subjected to escalated disparate treatment, harassment, and termination of his employment.

7

**COUNT I – DISCRIMINATION BASED ON RELIGION**
**TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. § 2000e, et. Seq**
**(Defendants Wheatland Tube, LLC and Zekelman Industries, Inc.)**

37. Plaintiff realleges and incorporates by reference and all facts and allegations in all other paragraphs of Plaintiff's Amended Complaint as if fully set forth herein.

38. Plaintiff (Muslim) is a member of a protected class.

39. Plaintiff was qualified to perform his job and satisfactorily performed his duties and responsibilities within Defendants' legitimate expectations.

40. Plaintiff apprised Defendants of his religion, Muslim.

41. Defendant discriminated against Plaintiff because of his religion by refusing to accommodate his desire of a safe and free non-discriminatory work place and for harassing and discriminating against him for the same, creating a hostile work environment, and would not have done so had Plaintiff not been Muslim and everything else having been the same.

42. Other non-Muslim employees subjected to the same work environment, policies, procedures, and guidelines as Plaintiff were not discriminated against as Defendants accommodated those employees' safe and free non-discriminatory workplace rights. This unlawful discrimination directly impacted Plaintiff's terms and conditions of employment with Defendants.

43. Plaintiff's religion was a substantial and motivating factor in Defendants' decision to discriminate against Plaintiff. Defendants would not have discriminated against Plaintiff absent consideration of Plaintiff's religion.

44. Defendants' discrimination constitutes unlawful discrimination in direct violation of Title VII.

WHEREFORE, Plaintiff, MICHAEL FLOURNOY, respectfully requests that this Court enter judgment in his favor and against Defendants as follows:

A. Declare, decree, and adjudge that Defendants violated Title VII;

B. Grant an injunction against Defendants from violating Title VII and to protect other employees from such violations;

C. Enter appropriate injunctive relief awarding the Plaintiff the back pay, front pay, wages, employee benefits, and other compensation that he was denied or lost and reinstating him to the position he previously held;

D. Order Defendants to pay the Plaintiff compensatory damages;

E. Award the Plaintiff pre-judgment and post-judgment interest to which he is entitled;

F. Award the Plaintiff his reasonable attorney's fees and costs; and

G. Award such other and further relief as it is just and appropriate, including nominal damages.

**COUNT II – RETALIATION**
**TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. § 2000e, et. Seq**
**(Defendants Wheatland Tube, LLC and Zekelman Industries, Inc.)**

45. Plaintiff realleges and incorporates by reference and all facts and allegations in all other paragraphs of Plaintiff's Amended Complaint as if fully set forth herein.

46. It is an unlawful employment practice for an employer to fail or refuse to hire, refuse to promote, suspend or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, for engaging in a protected activity.

47. Plaintiff (Muslim) is a member of a protected class under Title VII.

48. Plaintiff engaged in a Title VII protected activity by reporting illegal acts by Defendants.

49. Defendants knowingly and intentionally engaged in harassment and retaliation of Plaintiff by creating an intolerable, hostile work environment for Plaintiff.

50. Defendants' decision to discriminate and retaliate against Plaintiff was solely motivated by the fact that he reported discrimination and retaliation.

51. Defendants would not have retaliated against Plaintiff had he not reported the discrimination and retaliation. The retaliation against Plaintiff directly impacted his terms and conditions of employment with Defendants.

52. Defendants' retaliation against Plaintiff constitutes unlawful discrimination in direct violation of Title VII.

53. As a direct and proximate result of Defendants' unlawful and willful violations, Plaintiff has suffered economic and non-economic damages, including but not limited to loss of wages, emotional distress, damaged reputation, humiliation, anguish and outrage.

WHEREFORE, Plaintiff, MICHAEL FLOURNOY, respectfully requests that this Court enter judgment in his favor and against Defendants as follows:

A. Declare, decree, and adjudge that Defendants violated Title VII;

B. Grant an injunction against Defendants from violating Title VII and to protect other employees from such violations;

C. Enter appropriate injunctive relief awarding the Plaintiff the back pay, front pay, wages, employee benefits, and other compensation that he was denied or lost and reinstating him to the position he previously held;

D. Order Defendants to pay the Plaintiff compensatory damages;

E. Award the Plaintiff pre-judgment and post-judgment interest to which he is entitled;

F. Award the Plaintiff his reasonable attorney's fees and costs; and

      G.      Award such other and further relief as it is just and appropriate, including nominal damages.

Dated:  July 1, 2024

                                            /s   *Antonio L. Jeffrey*
                                                    Attorney for Plaintiff

JEFFREY LAW OFFICE, LLC
Antonio L. Jeffrey (#6308345)
27475 Ferry Rd., Ste. 143
Warrenville, Illinois 60602
(312) 583-7072
(312) 583-0888 (fax)
ajeffrey@jeffreylawoffice.com